# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-251

**SHARON SCHULTZ, ET AL.**

**VERSUS**

**JANOS GUOTH, M.D. AND KHALED F. RABIE, M.D.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 221,066
HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ELIZABETH A. PICKETT**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**WRIT DENIED.**

**Gremillion, J., dissents and assigns written reasons.**

**Joseph T. Dalrymple**
**Dalrymple & Ledet**
**1450 Dorchester Drive**
**Alexandria, LA 71301**
**(318) 442-1818**
**Counsel for Plaintiff-Respondent:**
**Leanne Brow**

**Victor Herbert Sooter**
**Sooter & Associates**
**P. O. Box 1671**
**Alexandria, LA 71309**
**(318) 448-8301**
**Counsel for Defendant-Applicant:**
**Khaled F. Rabie, M.D.**

**PICKETT, Judge.**

The defendant, Khaled F. Rabie, M.D., seeks supervisory writs from the judgment of the trial court which denied his motion for summary judgment.

## STATEMENT OF THE CASE

This is a medical malpractice case. Plaintiff Leanne Brow sued Dr. Khaled F. Rabie and Dr. Janos Guoth for the death of her stillborn child. The fifteen-year-old Ms. Brow had arrived at Oakdale Community Hospital in premature labor with a placenta tear. Dr. Guoth transferred her to Rapides Women's and Children's Hospital under the care of Dr. Rabie. Upon her arrival at 6:30 a.m. Dr. Rabie was notified, and he arrived at 6:55 a.m. After conflicting fetal heart rate reports, Dr. Rabie performed a C-section at 7:25 a.m. and delivered a stillborn child.

Ms. Brow alleged that Dr. Rabie was negligent in accepting an emergency referral at 4:50 a.m. and, after being apprised of Ms. Brow's ruptured membrane, amniotic fluid, blood, contractions and cervical dilation, failing to arrive earlier to perform an emergency C-section.

The medical review panel unanimously found in favor of both doctors. Dr. Guoth has since been dismissed from this suit. In the course of these proceedings, Dr. Rabie filed a motion for summary judgment alleging that without an expert witness Ms. Brow would be unable to meet her burden of proof at trial. Following a hearing, the trial court denied Dr. Rabie's motion for summary judgment. Dr. Rabie has filed a supervisory writ application in this court seeking a reversal of the trial court's ruling.

1

## DISCUSSION

Since the denial of a motion for summary judgment is an interlocutory ruling from which no appeal may be taken, the only practical remedy available to avoid a possibly useless trial on the merits is to request that the appellate court exercise its supervisory jurisdiction to review the propriety of this ruling. *Louviere v. Byers*, 526 So.2d 1253 (La.App. 3 Cir.), *writ denied*, 528 So.2d 153 (La.1988).

To prevail on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact, and that he is entitled to a judgment as a matter of law. La.Code Civ.P. art. 966; *see also Babin v. Winn-Dixie, Inc.*, 00-78 (La. 6/30/00), 764 So.2d 37. Section 3(C) of La.Code Civ.P. art. 966 sets forth the burden of proof in a summary judgment proceeding:

> (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.

> (2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Schroeder v. Board of Supervisors of Louisiana State University*, 591 So.2d 342 (La.1991).

2

In this case, Ms. Brow bears the burden of proof at trial. Therefore, Dr. Rabie must show Ms. Brow is unable to produce factual support for any of the essential elements of her claim. Louisiana Revised Statute 9:2794(A) sets forth the required proof in a medical malpractice claim:

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Dr. Rabie contends that in order for Ms. Brow to make a prima facie case against him she will have to prove he deviated below the standard of care and that the her injuries occurred as a result of that action. Dr. Rabie argues that expert testimony is necessary to prove a violation of the standard of care in this case. In support of his motion for summary judgment, Dr. Rabie submitted his favorable medical review panel opinion as well as the affidavit of one of the panelists who stated that Dr. Rabie

3

did not breach the standard of care.  The evidence submitted by Dr. Rabie suggested that Ms. Brow's child was probably dead at the time Ms. Brow arrived at the hospital.

In its written reasons for denying summary judgment, the trial court stated that Ms. Brow did not need expert testimony in order to defeat the Dr. Rabie's summary judgment.  The trial court cited the case of *Pfiffner v. Correa*, 94-992, 84-924, 94-963 (La. 10/17/94), 643 So.2d 1228, for the holding that expert testimony is not always required in a medical malpractice case.  In that case, the supreme court noted that in most cases the plaintiff will fail to prove his claim without expert testimony if there are complex medical issues involved.  Pfiffner died after a late diagnosis and treatment of a severe brain injury.  The supreme court found that plaintiff did not meet her burden of proving, either through her own experts or the testimony of the defendants or defense experts, that the doctors breached the standard of care with the lack of expeditious treatment and that this breach caused Pfiffner's death or loss of chance of survival.  The supreme court reversed the lower courts' decision because there was no proof that Pfiffner would have fared any better had he received earlier treatment because his brain injury was inoperable.  The *Pfiffner* court stated:

> The jurisprudence has also recognized that there are situations in which expert testimony is not necessary.  Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence.  *See Hastings v. Baton Rouge Gen. Hosp.*, 498 So.2d 713, 719 (La.1986).  Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary are also examples of obvious negligence which require no expert testimony to demonstrate the physician's fault. *See id.*

4

at 719-20. Likewise, where the defendant/physician testifies as to the standard of care and his breach thereof, see, e.g., *Riser v. American Medical Int'l Inc.*, 620 So.2d 372, 377 (La.Ct.App. 5th Cir.1993), or the alleged negligence consists of violating a statute and/or the hospital's bylaws, see, e.g., *Hastings*, 498 So.2d at 722 (violation of LSA-R.S. 40:2113.4 which imposes duty on a hospital to make emergency services available to all persons in the community without regard to income or insurance protection and hospital bylaws establishing duties for on-call physicians), expert testimony is also unnecessary to establish a malpractice claim.

*Id.* at 1233-34.

Dr. Rabie does not attempt to distinguish the *Pfiffner* case, but instead claims that of the ninety-three times *Pfiffner* was cited in later jurisprudence, none of those cases involved an obstetrical case. Dr. Rabie cites *McCann v. ABC Ins. Co.*, 93-1789 (La.App. 4 Cir. 7/14/94), 640 So.2d 865, for authority for its position that expert testimony is necessary in order to show the delay in performing a C-section caused the death of the infant. In that case, the plaintiffs alleged that after attempting a forceps delivery, the doctor failed to timely perform the C-section and that he failed to monitor the plaintiff and the unborn infant. During the delivery, the infant suffered a severe hypoxic event which caused its brain to be deprived of oxygen, resulting in the infant's later death. The cause of the event was not known. The plaintiffs did not present expert testimony to show that the doctor's actions caused the hypoxic event. Next, the court looked at whether the doctor's lack of monitoring the baby's heart rate could be negligent. The court found that the evidence showed that it was the duty of the nurse to check the heartbeat and no evidence was submitted to show otherwise. Ultimately, the fourth circuit found that the trial court correctly granted the directed verdict in favor of the doctor.

5

In the instant case, the trial court found that there are genuine issues of material fact as to whether Dr. Rabie arrived timely at the hospital to respond to the emergency, whether he waited too long to perform the C-section, and whether his delay caused the death of the unborn child. The trial court found that Ms. Brow did not need an expert witness to defeat Dr. Rabie's motion for summary judgment. The court stated that the jury could reasonably infer negligence in the doctor's conduct from the medical and factual issues. However, Dr. Rabie claims that a layman cannot infer negligence from the facts of this case and cannot determine if the child would have survived delivery if he had acted sooner.

The hearing on the motion for summary judgment was not recorded, and we are unable to determine what evidence, if any, was submitted by Ms. Brow. However, it is possible that Ms. Brow will rely on the testimony of the defendant doctors themselves as to the standard of care and on Dr. Rabie's testimony regarding his alleged breach of that standard of care. In addition, as noted in *Pfiffner*, 643 So.2d 1228, the facts of this case could demonstrate that Dr. Rabie's failure to respond timely to the patient's emergency is an example of obvious negligence that requires no expert testimony to show his fault.

After reviewing the evidence in this case and hearing arguments of counsel, the trial court determined that the jury could infer negligence from the facts of the case. The Louisiana Supreme Court noted in *Pfiffner* that a physician's delay in responding to an emergency is an example of obvious negligence that would require no expert testimony. In addition, it is possible that Dr. Rabie's testimony in his deposition

6

could provide Ms. Brow with proof of a breach of the standard of care. Based on the information provided to this court, we deny Dr. Rabie's writ application, finding that there are genuine issues of material fact that warrant trial on the merits. We find that pursuant to the *Pfiffner* case, expert testimony is not required in order for Ms. Brow to prove her malpractice claim.

**WRIT DENIED**.

**LEANNE BROW INDIVIDUALLY AND ON BEHALF OF HER UNBORN**

**CHILD, DESTINY RICHMOND**

**VERSUS**

**JANOS GUOTH, M.D. AND KHALED F. RABIE, M.D.**


**GREMILLION, Judge, dissenting.**

The trial court erred in denying Relator's motion for summary judgment. Given the complex medical issues involved in this case, without expert testimony the Plaintiff will be unable to sustain her burden of proving at trial that the Relator's conduct constituted a breach in the applicable standard of care and that this breach resulted in the damages sustained.